UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | ) | NOS.  CR-02-0184-WFN-1 |
|---|---|---|
| Plaintiff/Respondent, | ) | CV-09-0326-WFN |
| | ) | CR-03-0084-WFN-1 |
| -vs- | ) | CV-09-0327-WFN |
| | ) | |
| KENNETH R. OLSEN, | ) | ORDER DENYING IN PART |
| | ) | SECTION 2255 MOTION |
| Defendant/Movant. | ) | |

An evidentiary hearing was held May 17 and May 18, 2010, on only the juror misconduct ground of Mr. Olsen's 28 U.S.C. § 2255 Motion, filed October 13, 2009 (CR-02-0184, Ct. Rec. 293 and CR-03-0084, Ct. Rec. 114). The Court allowed the parties to file simultaneous briefing following the preparation of a transcript of the evidentiary hearing. The briefing filed by both parties on June 7 and June 14, 2010, has been received and reviewed by the Court. The Court has also reviewed the file and the § 2255 Motion and is fully informed. For the reasons stated below the Court denies in part the 2255 Motion.

## I.  BACKGROUND

The background of this case is set forth in the Court's Order filed October 27, 2009, and will not be repeated here. Defendant has alleged the following grounds in his § 2255 Motion: (1) that his conviction was obtained by action of a jury that was unconstitutionally selected and empaneled; (2) that his conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to the Defendant; (3) that he was denied the effective assistance of counsel; (4) that he was denied due process of law because the jury

ORDER DENYING IN PART
SECTION 2255 MOTION - 1

1   instructions obviated the need for the prosecution to prove an element of the crime; (5) that
2   he was denied the due process of law because the prosecution repeatedly relied on
3   impermissible guilt-assuming hypotheticals; and (6) cumulative errors mandate a new trial.

4       The evidentiary hearing addressed only ground one related to juror misconduct. After
5   review of the file the Court has determined that all additional grounds except ground two,
6   which relates to Arnold Melnikoff, may be decided without an evidentiary hearing. *See*
7   *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir.1994) (the Court need not hold an
8   evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in
9   the record). The Court will address in this Order the grounds that may be resolved and set
10  a telephonic status conference with counsel to discuss the scheduling of a second evidentiary
11  hearing related only to Mr. Melnikoff.

12                          **II.  DISCUSSION**

13      To obtain relief pursuant to 28 U.S.C. § 2255 Mr. Olsen must show that: (1) his
14  sentence was imposed in violation of the Constitution or federal law; (2) the court lacked
15  jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum
16  authorized by law; or (4) the conviction or sentence is otherwise subject to collateral attack.
17  28 U.S.C. § 2255.

18      **A.  Juror Misconduct.** Mr. Olsen asserts that Juror Leavitt [hereinafter "Juror"] was
19  familiar with pretrial publicity and had formed an opinion that Mr. Olsen was guilty before
20  the trial started, but failed to disclose his knowledge and prejudice during *voir dire*. Mr.
21  Olsen also argues that Juror provided false answers to two questions on the juror
22  questionnaire. Related to this issue of juror misconduct, Mr. Olsen also alleges that defense
23  counsel failed to ask sufficiently particular questions concerning Juror's knowledge or
24  prejudice during jury selection and that this constitutes ineffective assistance of counsel.

25      A criminal defendant is not entitled to a perfect trial, "for there are no perfect trials,"
26  but the defendant is entitled to a fair trial. *Brown v. United States*, 411 U.S. 223, 231-32

(1973).  A fair trial encompasses the Sixth Amendment right to trial by an impartial jury.  U.S. Const. amend. VI.; *United States v. Wood,* 299 U.S. 123, 134 (1936).  An impartial trier of fact exists if the jury is "capable and willing to decide the case solely on the evidence before it."  *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (internal quotations omitted).  There is a presumption of a prospective juror's impartiality.  *Irwin v. Dowd,* 366 U.S. 717, 723 (1961).  However, the bias or prejudice of only one juror is sufficient to violate a defendant's right to a fair trial.  *United States v. Angulo,* 4 F.3d 843, 848 (9th Cir. 1993).

Bias of a prospective juror may be: (1) actual (where a juror has a "pre-set disposition not to decide an issue impartially"); (2)  implied ("in exceptional circumstances, where, for example, a prospective juror has a relationship to the crime . . . or has repeatedly lied about a material fact to get on the jury"), *Fields v. Brown*, 503 F.3d 755, 766 (9th Cir. 2007); or (3) found to exist where a juror fails "to answer honestly a material question on voir dire", and a correct response would  provide "a valid basis for a challenge for cause."  *McDonough*, 464 U.S. at 556 (holding that to get a new trial based on a juror's responses in voir dire, a party must demonstrate that the juror failed to answer honestly and that a correct response would have provided a basis for a challenge for cause).

Based on the evidence presented in the briefing and at the evidentiary hearing, the Court concludes that Juror was not biased.  Mr. Ryan presented credible testimony, that Juror told Mr. Ryan during June and July of 2002, that Juror had knowledge of Mr.Olsen's case and had an opinion that Mr. Olsen was guilty.[1]  Juror admitted at the evidentiary hearing that it was possible these conversations with Mr. Ryan occurred, but that he had no memory of them one way or the other.  Transcript of Evidentiary Hearing [T] 195:2-5.  Mr. Olsen alleges

---

[1]There was media attention at this time regarding Mr. Olsen's arrest and Juror had learned information about the Government's case from the media.

ORDER DENYING IN PART
SECTION 2255 MOTION - 3

1    that Juror failed to honestly disclose, during *voir dire* for Mr. Olsen's trial that began one year

2    later on June 30, 2003, that he had previously held these opinions regarding Mr. Olsen's guilt.

3          The Supreme Court has noted the following regard a prospective juror's prior opinion:

4          To hold that the mere existence of any preconceived notion as to the guilt or
           innocence of an accused, without more, is sufficient to rebut the presumption
5          of a prospective juror's impartiality would be to establish an impossible
           standard. It is sufficient if the juror can lay aside his impression or opinion and
6          render a verdict based on the evidence presented in court.

7     *Irvin,* 366 U.S. at 723; see also, *Crater v. Galaz*, 491 F.3d 1119, 1133 (9th Cir. 2007).

8          Just as the Court found Mr. Ryan credible about events that occurred one year before

9    the trial, the Court also finds as credible Juror's testimony that at the time of trial he did not

10   remember having had these opinions. Moreover, there is no evidence that Juror still held his

11   opinions of Mr. Olsen's guilt one year after discussing the facts of this case with Mr. Ryan.

12   Juror admitted to having heard of the case on *voir dire,* as did many other prospective jurors,

13   but he assured the Court that he was not aware of any reason why he could not be a fair and

14   impartial juror. The Court concludes that Juror's responses during *voir dire* were not false.

15         The Court also finds that Juror's answers to questions 25 and 27 on the juror question-

16   naire completed in June, 2003 were inaccurate. Juror had been convicted of criminal

17   trespass, but he failed to answer 'yes' to question 27. Still, Juror's explanation that he had

18   forgotten about the 1994 conviction that occurred during a time when he had a problem with

19   alcohol was credible. He also should have disclosed on question 25 that he had been sued

20   for debt collection. Again, however, he offered a credible explanation of why he did not

21   think of these past issues as cases where he was "sued." Clearly he was mistaken but the

22   Court does not find that he intentionally gave the Court false information. Mistaken, but

23   honest juror responses can occur and may not require a new trial. *Dyer v. Calderon*, 151 F.3d

24   970, 973 (9th Cir. 1998) (observing that it follows from *McDonough* that "an honest yet

25   mistaken answer to a voir dire question rarely amounts to a constitutional violation; even an

26   intentionally dishonest answer is not fatal, so long as the falsehood does not bespeak a

ORDER DENYING IN PART
SECTION 2255 MOTION - 4

1    lack of impartiality").  Moreover, there is no evidence that the inaccurate answers were an

2    attempt to serve on a jury, let alone Mr. Olsen's jury.  The Ninth Circuit has recently

3    observed

> [i]n sum, we have implied bias in those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances, or where repeated lies in voir dire imply that the juror concealed material facts in order to secure a spot on the particular jury.

8    *Fields,* 503 F.3d at 770 (internal citations and quotation marks omitted).  Finally, there is no

9    evidence that had Juror given accurate answers on the questionnaire, that the answers would

10   have been the basis for a challenge for cause.

11          Finally, Mr. Olsen asserts that at the evidentiary hearing Juror testified falsely that he

12   had completed the questionnaire on the day the trial began.  The questionnaire is dated

13   June 14, 2003 and the first day of trial was June 30, 2003 (Ct. Rec. 189), so Juror was clearly

14   mistaken.  Mr. Olsen characterizes this as another patently false statement.  In fact, the Court

15   finds only that Juror, like most people, can be mistaken about inconsequential events that

16   occurred seven years earlier.  As the Government correctly observes, no witness, including

17   defense counsel Christina Hunt, could remember all of the details surrounding the events

18   that occurred between the time Mr. Olsen was arrested and his trial was completed.

19   Discrepancies existed between the testimony of witnesses which this Court finds to be

20   nothing but innocent mis-recollections.

21          The Court is aware that "'[d]oubts regarding bias must be resolved against the juror.'"

22   *United States v. Gonzalez,* 214 F.3d 1109, 1114 (9th Cir. 2000) (quoting *Burton v. Johnson,*

23   948 F.2d 1150, 1158  (10th Cir. 1991)).

24          Here, the Court does not hold a doubt about the impartiality of Juror.

25          Mr. Olsen also asserts an ineffective assistance of counsel claim but only if the Court

26   determined that Juror was not dishonest because he wasn't asked a sufficiently particular

1    question concerning Juror's knowledge or prejudice during jury selection by defense counsel.

2    The Court has not found this to be the case, so the claim need not be addressed.  The Court

3    did review the Transcript of Jury Selection, however, and finds that Ms. Hunt's *voir dire*

4    asked specific enough questions to ferret out whether potential jurors had information about

5    the case, had talked to others about it, and had formed opinions.  Counsel was not ineffective.

6         Accordingly, the ground of juror misconduct, is dismissed.

7         **B.  Jury Instructions.**  Mr. Olsen asserts that the jury instruction on Count 2 stated

8    the conclusion that ricin was a "chemical weapon."  Read as a whole, this instruction

9    improperly eliminated or reduced the Government's burden of proving every element of

10   Count 1 - that Mr. Olsen possessed a biological agent for use as a weapon.  Mr. Olsen

11   admits the jury instruction issue was not raised on appeal but that the ineffective

12   assistance of counsel claims are to both trial and appellate counsel and depend on extra-

13   record facts.

14        The Government argues that the issue is procedurally defaulted because it was not

15   raised on appeal and no cause or prejudice is shown.  On the merits the Government argues

16   that the instructions did not relieve the Government of the burden to prove each element

17   beyond a reasonable doubt.

18        Claims of error that could have been raised on direct appeal by a criminal defendant,

19   but are not raised, may not be addressed on collateral review unless the defendant can prove

20   both cause and actual prejudice, *United States v. Skurdal,* 341 F.3d 921, 925 (9th Cir. 2003)

21   or actual innocence.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).  "Cause" generally

22   requires a showing that "some objective factor external to the defense" prevented defendant

23   from raising the issue on appeal.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (ineffective

24   assistance of counsel under the standard established by *Strickland v. Washington*, 466 U.S.

25   668 (1984), a factual or legal basis not reasonably available to counsel, or interference by

26   government officials can all constitute "cause").  Ineffective assistance of counsel claims are

ORDER DENYING IN PART
SECTION 2255 MOTION - 6

1   not subject to the procedural default rule and thus may be raised for the first time on

2   collateral review.  *Massaro v. United States,* 538 U.S. 500, 504 (2003).

3         It is undisputed that the claimed error as to the jury instruction was not raised on

4   appeal.  However, Mr. Olsen asserts ineffective assistance of trial and appellate counsel

5   claims which can establish cause and prejudice.  Those claims are not subject to procedural

6   default. Using a practical approach, the Court will address the merit of the claims and bypass

7   the procedural default issue.

8         It is undisputed that the due process clause of the Fifth Amendment requires the

9   prosecutor prove each element of a crime beyond a reasonable doubt.  *Fiore v. White*, 531

10  U.S. 225, 228-229 (2001).  Jury instructions may not relieve the prosecution of this burden.

11  *Sandstrom v. Montana,* 442 U.S. 510, 524 (1979).

12        Here, the Court instructed as to Count 1 that to find Mr. Olsen guilty, the jury would

13  have to find that Mr. Olson possessed ricin for "use as a weapon." Ct. Rec. 213, No. 7.  The

14  term "use as a weapon" was defined as meaning "to produce or possess a biological agent

15  or toxin with the intent to use it to injure or harm another person or persons." Ct. Rec. 213,

16  No. 14.  The instruction also said that "use as a weapon" did not include "the production or

17  possession of a toxin for prophylactic, protective, bona fide research or other peaceful

18  purpose." Ct. Rec. 213, No. 14.  Thus,  to convict on Count 1 the jury had to find that Mr.

19  Olsen possessed the ricin for a non-peaceful purpose - with the intent to injure or harm

20  another person.

21        On Count 2 the Court instructed that to find Mr. Olsen guilty, the jury would have to

22  find that he possessed a chemical weapon knowingly and that he "did not develop, produce

23  or possess the ricin for a legitimate purpose, which means a purpose which is not prohibited

24  by law." Ct. Rec. 213, No. 9.  The term "chemical weapon" was defined as "a toxic chemical

25  . . . except where intended for a purpose that is not prohibited as long as the type and quantity

26  is consistent with such a purpose." Ct. Rec. 213, No. 16.  "Purposes not prohibited" was

ORDER DENYING IN PART
SECTION 2255 MOTION - 7

1   defined to include *inter alia* peaceful purposes.  Ct. Rec. 213, No. 17.  The Court instructed
2   the jury that "ricin is a toxic chemical."  Ct. Rec. 213, No. 18.  This was not a factual finding
3   by the Court but was a legal conclusion as ricin is listed as a Schedule 1 toxic chemical in
4   the Chemical Weapons Convention (cited in 18 U.S.C. § 229F (2)).  18 U.S.C. § 229F (8)(B).
5   So the definition was legally correct.

6          The Court did not, as Mr. Olsen claims, define ricin as a "chemical weapon."  Ricin
7   was only defined as a "toxic chemical" which then could be a "chemical weapon" but
8   only if the jury found that it was also intended for other than a legitimate purpose.  So on
9   Count 2 to convict the jury had to find that Mr. Olsen possessed the ricin for a purpose
10  other than those purposes listed as not prohibited.

11         In sum, defining ricin as a" toxic chemical" did not obviate the Government's burden
12  of proving every element of Count 1 - that Mr. Olsen possessed the ricin, a biological agent
13  "for use as a weapon."  To convict Mr. Olsen the jury was required to find that he possessed
14  the ricin for non-peaceful purposes on both Counts.

15         Further, the Government is correct that there is a presumption that the jury followed
16  the Court's instructions.  *Mejia v. Garcia,* 534 F.3d 1036, 1043, n. 3 (9th Cir. 2008).  Here,
17  the Court instructed that the jury was to consider each count separately and that "[y]our
18  verdict on one charge should not control your verdict on the other charge."  Ct. Rec. 213,
19  No. 4.  We cannot presume that the jury ignored this instruction and allowed the verdict on
20  Count 2 to control the verdict on Count 1.

21         Mr. Olsen also raised ineffective assistance of counsel claims related to the jury
22  instruction issue.  Mr. Olsen argues that based on the jury instruction problem, trial counsel
23  should have objected to the joinder of the indictments for trial, moved to sever the
24  indictments for trial or objected to the allegedly overlapping instructions.  He also argues that
25  appellate counsel failed to raise the instructional issue on appeal.  Since the Court has
26  determined there was no instructional problem the ineffective assistance of counsel claims

ORDER DENYING IN PART
SECTION 2255 MOTION - 8

can be dismissed.  Counsel was not ineffective by failing to raise merit-less issues, and Mr. Olsen was not prejudiced because there is no reasonable probability the outcome would have been different had the merit-less issues been raised.  *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986) (to succeed on an ineffective assistance of counsel claim based on an alleged failure to raise an issue, the defendant must prove that the issue was "meritorious and that there is a reasonable probability that the verdict would have been different . . . .")

Accordingly, the jury instruction grounds are dismissed.

## C. Hypothetical Questions.

<u>1. On the Merits.</u>  Mr. Olsen argues that the Government asked impermissible guilt-assuming hypothetical questions of two of its own witnesses (Rachel Kilayko and John Stokes) as well as of the five character witnesses for Mr. Olsen (Mike King, Lee Graham, Dave Hubbard, Roth Warner, Rex Walker) causing reversible error.  Defense counsel repeated the questions and the Court's instruction to strike the questions and answers was too late to cure the error.

The Government argues that this due process claim was raised on direct appeal and ruled upon so it is therefore barred.  "Issues raised at trial and considered on direct appeal are not subject to collateral attack under 28 U.S.C. § 2255." *Egger v. United States*, 509 F.2d 745, 748 (9th Cir. 1975).  In *Sanders v. United States,* 373 U.S. 1, 15 (1963) the Court determined that the rules governing motions under § 2255 should be the same as the rules governing successive collateral attacks and such motions should be denied if:

> (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Sanders,* 373 U.S. at 15; see also *Polizzi v. United States*, 550 F.2d 1133, 1136 (9th Cir. 1976).  Identical grounds, for purposes of this analysis, may be supported by different factual allegations and different legal arguments. *Sanders,* 373 U.S. at 16; *Polizzi,* 550 F.2d

ORDER DENYING IN PART
SECTION 2255 MOTION - 9

1    at 1136 (involuntary confession ground based on psychological coercion is not a different

2    ground than one based on physical coercion).

3            On appeal, the third trial issue raised by appellate counsel for Mr. Olsen was that

4    "the Government's improper cross examination of character witnesses was not cured by

5    instructions to the jury that it should not consider the resulting testimony." Appellant's

6    Opening Brief, pp. 2, 45.  The Ninth Circuit decided the issue on the merits adverse to Mr.

7    Olsen holding:

8            Any error in allowing guilt-assuming hypothetical questions that the prosecu-
             tion proposed to the defense character witness was cured by the limiting
9            instruction the district court presented to the jury.

10   United States v. Olsen, 120 Fed. Appx. 18, *1 (9th Cir. 2004).  Although the opinion used

11   the singular of "witness" as noted by Mr. Olsen, it is clear from Mr. Olsen's appellate brief

12   that the concern raised by the briefing related to more than one character witness.  Moreover,

13   the Excerpt of Record contained the full testimony of each of the character witnesses (Mike

14   King, Lee Graham, Dave Hubbard, Roth Warner, and Rex Walker).  So the hypothetical

15   questions asked of the witnesses by both the Government and trial defense counsel were

16   presented to the appellate court by appellate counsel for Mr. Olsen.  In addition, the two

17   Government witnesses (Rachel Kilayko and John Stokes) who were asked similar questions

18   were identified in the curative instruction given to the jury and their testimony was also

19   included in the Excerpt of Record.  Thus the legal issue was raised, and the factual basis for

20   the claim was before the appellate court when it determined the issue.

21           The first two Sanders factors would weigh against the opportunity to raise this

22   issue on collateral review.  Only if the ends of justice favored a second consideration of this

23   issue, should the Court do so on this § 2255 Motion.  If the questions were of a guilt-

24   assuming nature the Court might be more inclined to address the issue on the § 2255 Motion.

25           Guilt-assuming hypotheticals "undermines the presumption of innocence and

26   thus violates a defendant's right to due process." United States v. Shwayder, 312 F.3d 1109,

ORDER DENYING IN PART
SECTION 2255 MOTION - 10

1121 (9th Cir. 2002). If "the factual content of the prosecutor's questions had already been presented to the jury by the defense counsel in his opening statement" then the questions are not guilt-assuming and do not result in reversible error. *United States v. Velasquez*, 980 F.2d 1275, 1277 (9th Cir. 1992).

Here, it was clear from defense counsel's opening statement that the defense strategy was not to contest that Mr. Olsen had researched poisons, how to make ricin, or how to kill, or that he had actually made ricin. Instead, as made clear throughout the trial and in defense counsel's closing argument, the strategy was to argue that the Government had failed to prove his intent to possess the ricin as a chemical weapon or to "use as a weapon." Most of the "hypothetical" questions asked by the Government and defense counsel were questions related to facts that defense counsel did not dispute.[2] As such, they were not guilt-assuming because they did not reach the ultimate disputed fact related to Mr. Olsen's intent. Even if they had, the Court gave a curative instruction - found by the Ninth Circuit to be sufficient. The Court concludes that the ground regarding hypothetical questions must be dismissed because it was raised on appeal and is barred.

Even if the issue was addressed by this Court on the merits and the Court determined that guilt-assuming questions were asked, the Court would then have to determine whether such error was harmless, which is by necessity fact-specific. *United States v. Mason,* 993 F.2d 406, 409 (4th Cir. 1993). Given the significant evidence in this case which the Ninth Circuit described as "copious evidence of both toxicity and intent,"

---

[2]When the Government did ask of Roth Warner, a character witness for Mr. Olsen, about a  person who intended to kill or harm someone with a poison, defense counsel objected and the Court sustained the objection. Trial Transcript, Ct. Rec. 251, Vol 10, p. 1859.

ORDER DENYING IN PART
SECTION 2255 MOTION - 11

*United States v. Olsen*, 120 Fed. Appx. 18, *1 (9th Cir. 2004), and the defense strategy to focus on intent and not contest the well supported facts of Mr. Olsen's production of ricin and research regarding poisons and killing, the Court concludes that any error was harmless, as it did not affect the substantial rights of the parties.

## 2.  Ineffective Assistance of Counsel.

The Sixth Amendment provides that an accused in a criminal prosecution has a right to the assistance of counsel.  U.S. CONST. amend. VI.  In considering a claim of ineffective assistance of counsel, the Court must consider whether counsel's representation fell below an objective standard of reasonableness and whether the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *Strickland* provides:

> [t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Strickland*, 466 U.S. at 686.  "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* at 698.

The first prong of the *Strickland* test requires that Movant show "that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  The Court's scrutiny of counsel's performance must be highly deferential and must attempt to evaluate the conduct from counsel's perspective at the time. *Id.* at 689.

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id. quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955); *see, also, United States v. Bosch*, 914 F.2d 1239, 1244 (9th Cir. 1990).

ORDER DENYING IN PART
SECTION 2255 MOTION - 12

The second prong of the *Strickland* test provides "the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. A defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The standard requires a showing that there is a reasonable probability that, but for the counsel's errors, the results of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice prong need not be addressed if counsel's performance was not deficient. *United States v. Sanchez-Cervantes*, 282 F.3d 664, 672 (9th Cir. 2002).

The courts have noted that the trial judge is well suited to rule on ineffective assistance of counsel claims:

> the § 2255 motion often will be ruled upon by the same district judge who presided at trial. The judge, having observed the earlier trial, should have an advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial.

*Massaro v. United States,* 538 U.S. 500, 505-06 (2003). Here, this Court presided over Mr. Olsen's trial and recalls the professional and high level efforts of Mr. Olsen's defense counsel.

(a) <u>Trial Counsel.</u> On the first prong of the *Strickland* test the Court is asked to determine if the defense counsels' performance was deficient. *Strickland*, 466 U.S. at 687. Mr. Olsen asserts that defense counsel should have objected to the Government's questions and not asked similar questions themselves. Here the trial strategy chosen could certainly have been considered sound. Defense counsel did object to some of the questions. But for the most part counsel chose not to contest the underlying facts of Mr. Olsen's activities but to assert that he was a peaceful but curious person despite the facts. Thus not objecting to most of the hypothetical questions that assumed uncontested facts was reasonable. As to adopting some of the hypothetical questions with use with Mr. Olsen's

ORDER DENYING IN PART
SECTION 2255 MOTION - 13

1  character witnesses, the Government correctly notes that it can be an effective trial tactic for
2  defense counsel to preemptively use questions related to the conceded facts to blunt the
3  effect of the Government's cross examination.  The Court  concludes that trial counsel's
4  performance was not ineffective.

5         The second prong of the *Strickland* test provides "the defendant must show that
6  the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.  Even if trial
7  counsel was ineffective, as discussed above, any error regarding hypothetical questions was
8  harmless and Mr. Olsen was not prejudiced.

9              (b)  Appellate Counsel.  Defendant argues that  appellate counsel was
10 ineffective when counsel failed to inform the Court of Appeals of the full extent of the
11 guilt-assuming hypothetical questions, i.e. that defense counsel had also asked the
12 questions.  As discussed above, the appellate court had the full factual and legal basis for
13 the claim regarding the hypothetical questions before it when it determined that any error
14 caused by the questioning was cured by the Court's instruction.  Even if appellate counsel's
15 performance was deficient, Mr. Olsen has failed to show that the outcome of the appeal
16 would have been different but for this deficiency.  Given the evidence of guilt noted by the
17 Ninth Circuit there is no reasonable probability that the court would have reversed Mr.
18 Olsen's conviction.

19        Accordingly, the grounds related to hypothetical questions are dismissed.

20    **D.  Cumulative Errors.**  Multiple trial errors may deny a defendant due process when
21 the combined effect of the errors results in an unfair trial.  *Chambers v. Mississippi,* 410 U.S.
22 284, 302 (1973).  This may be true even if the individual errors were determined to be
23 harmless.  *Chambers,* 410 at 290, n.3.  A reviewing court must determine whether the
24 combined errors had a "substantial and injurious effect or influence on the jury's verdict."
25 *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).  One way this might occur is if the
26 harmless errors resulted in a defense that "was far less persuasive than it might have

been . . . ." *Chambers,* 410 U.S. at 294.  Of course if there are no errors, "there is nothing to accumulate to a level of a constitutional violation." *Mancuso v. Olivarez,* 292 F.3d 939, 957 (9th Cir. 2002).  Counsel's errors are evaluated individually, but multiple deficiencies may also have a cumulative effect.  *Boyde v. Brown,* 404 F.3d 1159, 1176 (9th Cir. 2005).

The Court has determined that on the grounds addressed in this Order  no errors occurred.  One ground, related to Mr. Melnikoff, remains to be addressed.  Since, there is only one possible error, the allegation of cumulative error is dismissed.

### III.  CONCLUSION

The Court concludes that all grounds raised by Mr. Olsen on this § 2255 Motion must be dismissed at this time with the exception of the ground related to Mr. Melnikoff.  Mr. Olsen had a fair trial by an impartial jury.  The jury instructions did not relieve the Government of the burden to prove all elements of the crime charged in Count 1 beyond a reasonable doubt.  The ground related to hypothetical questions must be dismissed because it was raised on appeal and is barred.  Alternatively, any error regarding the questions would have been harmless.  The Court also concludes that Mr. Olsen did not receive ineffective assistance of trial or appellate counsel.  Finally, cumulative errors did not occur.  Thus, the only remaining ground relates to Mr. Melnikoff.  An evidentiary hearing will supplement the record related to this matter and likely provide some answers to factual questions that exist.

### IV.  CERTIFICATE OF APPEALABILITY

An appeal of this Order may not be taken unless this Court or a Circuit Justice issues a certificate of appealability, finding that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2) (West 2010).  This requires a showing that "reasonable jurists would find the district Court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  If a claim is dismissed on procedural grounds, the Court must determine whether

ORDER DENYING IN PART
SECTION 2255 MOTION - 15

jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack*, 120 S. Ct. at 1604. A certificate of appealability should not be granted unless both components, one directed at the underlying constitutional claims, and the second directed at the court's procedural holding, are satisfied. *Id.* The Court may address either the constitutional or procedural issue first. *Id.* Based on the Court's preceding analysis, the Court concludes: (1) that the Mr. Olsen has failed to make a substantial showing of a denial of a constitutional right on the grounds addressed by this Order and (2) that jurists of reason would not find it debatable whether the Court was correct in any substantive or procedural ruling. Thus, a certificate of appealability should not issue on the grounds addressed in this Order. Accordingly,

**IT IS ORDERED** that

1. Mr. Olsen's Motion Under 28 U.S.C. § 2255, filed October 13, 2009, **CR-02-0184 Ct. Rec. 293** and **CR-03-0084 Ct. Rec. 114** ,is **DENIED in part**. All grounds except those related to Mr. Melnikoff are **DISMISSED**.

2. A telephonic status conference shall be held **July 20, 2010, at 9:45 a.m.** Counsel shall **call the Court's conference line, 509.458.6381**, to participate. The purpose of the call will be to set a second evidentiary hearing related to only Mr. Melnikoff. Counsel are requested to consult prior to the call to determine some potential dates for the hearing.

The District Court Executive is directed to:

• File this Order,

• Provide copies to counsel, and

• Inform the Ninth Circuit Court of Appeals that if Mr. Olsen files a Notice of Appeal that a certificate of appealability is **DENIED on the grounds addressed by this Order**.

ORDER DENYING IN PART
SECTION 2255 MOTION - 16

1    **DATED** this 15th day of July, 2010.

2

3                                    s/ Wm. Fremming Nielsen
                                    WM. FREMMING NIELSEN
4    07-0810                    SENIOR UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26